## MARCH *v.* EASTERN RAILROAD COMPANY.

A minority of the stockholders in a corporation have a remedy in chancery against the directors and against the corporation, and against all others, whether individuals or corporations, assisting or confederating with them, to prevent such corporation and the directors thereof from making any misapplication of their capital or profits which might result in lessening the dividends of stockholders, or the value of their shares, if the acts intended to be done create what in law is denominated a breach of trust or duty.

Such stockholders have a remedy against individuals, in whatever capacity they may profess to act, and against corporations, both the one of which they are members and all others acting in concert with it, to effect and accomplish a common purpose and object, when the object thus to be accomplished is an imputed violation of a corporate franchise, or the denial of a right growing out of it, for which there is not an adequate remedy at law.

Therefore, where the allegations in the bill were that Railroad A had leased and entered upon the track, fixtures, furniture, &c., of Railroad B for a term of years, and had agreed to pay said Railroad B, as rents, at stated times, a certain share of the income and profits of both roads; and also that such profits to a large amount had been received by said Railroad A, and had been accumulating for several years; said Railroad A refusing to pay said rent, according to the terms of said lease, and claiming to apply such profits in payment for investments by them made in stocks of other corporations, and in other schemes of speculation not warranted by the terms of said lease; and that said Railroad B and its directors, being influenced by persons in the interest of said Railroad A, had declined to take measures to collect said rents of said Railroad A, but were allowing and assenting to such improper and illegal application of the funds belonging to them, to which funds said stockholders were proportionably with others entitled, as dividends upon their stock—*Held*, upon demurrer to said bill, by Railroad A, that a minority of the stockholders in Railroad B might maintain said bill against the directors of their own road, and against their own corporation, and also against Railroad A, the object of which bill was to prevent such alleged illegal misapplication of the funds, and to compel said Railroad A to pay over its dues to Railroad B, and to compel the latter to distribute the same as dividends among its stockholders, the plaintiffs and others.

But in order to prevent a multiplicity of suits, and that justice may be done between all parties interested, such stockholders should set forth in their bill, that it is brought not only for themselves but for all others similarly interested, who may choose to become plaintiffs in the proceeding.

March *v.* Eastern Railroad Company.

In the indentures by which Railroad B leased their road, &c., to Railroad A, there was an agreement to refer all matters of dispute that might arise between them upon the lease.—*Held,* that this agreement to refer not only did not oust this court of its jurisdiction at law or in equity, in a suit between the parties to such contract, but also that at the instance of a minority of the stockholders in Railroad B, under the circumstances stated, this court might enjoin both said roads from entering into such reference, according to said agreement, in relation to the amount of rents due to said Railroad B; and if such reference had been entered into, from proceeding with such reference.

When a contract is made and is to be performed within a foreign jurisdiction, yet a court of equity will enforce it here, if it has or can acquire jurisdiction of the person or party.

This court has jurisdiction to render a valid judgment against a foreign corporation, whenever the corporation appears generally by attorney, or when legal service has been made upon it, according to the provisions of our laws.

Where the court has jurisdiction of the subject matter and of the parties to the suit, it will render its judgment without waiting to inquire whether either party have sufficient property in the jurisdiction to respond to such judgment. The question as to how his judgment shall be satisfied when he gets it, is for the party who obtains it, and not for the court.

In Equity. In the bill, *Clement March, William P. Jones, Alfred W. Haven, A. M. Barnes, Executrix of Lewis Barnes,* and *James W. Emery,* are set forth as the plaintiffs, bringing this bill in behalf of themselves and all other stockholders in the Eastern Railroad in New-Hampshire who come in and join in this suit, &c., against *The Eastern Railroad Company, The Eastern Railroad in New-Hampshire, Ichabod Goodwin, Daniel P. Drown, Benjamin T. Reed, George W. Brown* and *Stephen A. Chase,* as defendants. At this term of the court, *Jonathan P. Robinson* and *Rufus Leavitt* came in and joined in the suit as plaintiffs. The bill alleges:

1. That the Eastern Railroad in New-Hampshire was duly incorporated by act of our legislature, June 18, 1836, and was duly organized:

2. That the plaintiffs are interested in said corporation as shareholders, owning stock severally, as therein specified :

3. That by act of our legislature of July 2, 1839, said railroad was duly authorized to lease a part or the whole of its road and appurtenances to such persons and on such terms as they should think proper :

4. That in pursuance of this power said railroad did, after having located its road, on the 18th of February, 1840, lease all its road, rights, &c., to the Eastern Railroad Company, a corporation located in Massachusetts, and organized and established under the laws of that State, for the term of ninety-nine years, by indentures which are annexed to the bill :

5. That said Eastern Railroad Company, in and by said indentures, agreed to pay as rent for this property, a share of the net profits at the same time with its dividends to its own stockholders, which should bear the same proportion to the whole net profits that the stock in the New-Hampshire road, at the time of such division, should bear to the whole amount of stock in both corporations :

6. That said indenture provided for the manner in which the net profits should be ascertained, and further provided that if said Eastern Railroad Company should not deem it expedient to pay a dividend to its own stockholders at any time, they should, nevertheless, pay to the Eastern Railroad in New-Hampshire, semi-annually, its ratable proportion of the net income :

7. And that if any disagreement or difference of opinion should arise between the parties, it should be settled and determined by arbitrators selected as therein provided :

8. That said Eastern Railroad Company, under said lease, entered into and took possession of said Eastern Railroad in New-Hampshire, and have since continued in possession, receiving rents and profits. But that since July, 1854, it has refused to pay rent therefor, or any share of the net income, though they have received, yearly,

large profits, and should have paid its share to the Eastern Railroad in New-Hampshire, amounting to more than $800,000, after deducting interest on all its indebtedness :

9. That, at the date of the lease, the capital stock of the Eastern Railroad Company. was $1,600,000, and its road was then nearly completed to the extent of its charter, and that its indebtedness was then, as stated by the directors, not exceeding $500,000 :

10. That since the making of said indenture the Eastern Railroad Company have engaged in diverse speculations, not within the contemplation of the parties, and not within the powers conferred by the legislature, to wit: It has built the Gloucester, the Marblehead, the Salisbury, and the Saugus branches, all at a cost, as stated by them, of more than $700,000, which branches produce but little income. It has bought the South Reading branch at about $300,000, and the Essex Railroad, or a controlling interest therein, for more than $264,000, which latter produces but little income, while the former produces none, but actually increases its debt every year; that it has paid out $160,000 for worthless stock in the Great Falls and Berwick Branch Railroad, and in the Grand Junction Railroad; has changed its route into Boston, at a cost of more than $1,000,000, all without authority, and in violation of said agreement :

11. That said Eastern Railroad Company for several years employed one Tuckerman as treasurer, who took their money, and they claim to deduct $232,780.47, as lost by him in making up the net income :

12. That the capital stock of the Eastern Railroad Company is now $2,853,400, which increase has been caused almost entirely by the aforesaid expenditures, recklessly made, and without any benefit to either corporation, but only to some of the managers thereof, thus fraudulently increasing the amount of stock on which dividends are to be made, without increasing the income :

13. That the debt of said Eastern Railroad Company has been largely increased by this useless and unauthorized expenditure, to more than $3,000,000, and that within four years past they have paid of said debt, from the net income, nearly $900,000:

14. That for the last five years the directors of the Eastern Railroad in New-Hampshire have been *Ichabod Goodwin* and *Daniel P. Drown*, both of Portsmouth, New-Hampshire, *Stephen A. Chase*, of Salem, *Benjamin T. Reed*, of Boston, and *Isaiah Breed*, late of Lynn, Massachusetts, who, during that time, have made no attempt to collect said rent, but have always asserted that all the stipulations of the lease have been complied with by said Eastern Railroad Company:

15. That at the annual meeting of the Eastern Railroad in New-Hampshire, in July, 1858, an attempt was made to have said rent collected, and a committee was appointed, who reported a large amount as due from said Eastern Railroad Company to said Eastern Railroad in New-Hampshire, July 12, 1859, at their annual meeting:

16. That at said last mentioned meeting persons interested to a much larger extent in the Eastern Railroad Company than in the Eastern Railroad in New-Hampshire, controlled said meeting, and proceeded to select for directors the same men above mentioned, except that Brown was put in place of Breed, who had small interest in the Eastern Railroad in New-Hampshire, and that three of the five were largely interested, and stockholders in said Eastern Railroad Company; and that none of them were in fact legally chosen except Goodwin, though they were all declared so to be, being the same men, except Brown, who had refused for five years to assert the rights of the Eastern Railroad in New-Hampshire, and had asserted in that time that the Eastern Railroad in New-Hampshire owed the Eastern Railroad Company a large sum, &c., and have, at the instance of the directors

of the Eastern Railroad Company, attempted to impose other large debts upon the Eastern Railroad in New-Hampshire :

17. That the whole stock of said Eastern Railroad in New-Hampshire is divided into 4,925 shares :

18. That each of the persons elected directors as aforesaid have often expressed the opinion that the Eastern Railroad in New-Hampshire has no claim upon the Eastern Railroad Company :

19. That the plaintiffs hoped that said meeting would have been fairly conducted, &c., and the terms of the lease enforced and complied with ; but the Eastern Railroad Company and the Eastern Railroad in New-Hampshire, controlled as aforesaid, and the said Goodwin, Brown, Chase, Reed and Drown, combining, contriving, &c., controlled said meeting and prevented the election of directors who would truly represent the interests of the stockholders in said Eastern Railroad in New-Hampshire, and passed a vote putting the whole matter of enforcing the terms of the lease and collecting the rents into the hands of those deeply interested in, and under the control of said Eastern Railroad Company :

20. That the defendants pretend that there has been no net income within the true intent and meaning of the indenture ; but the plaintiffs charge that there have been every year large profits received by the Eastern Railroad Company which should have been paid over to the Eastern Railroad in New-Hampshire, but which have been unjustly retained :

21. That the defendants pretend that, by the indenture aforesaid, the two corporations are one and the same, and that thereby the Eastern Railroad in New-Hampshire is bound by all the acts, &c., of the directors, &c., of the Eastern Railroad Company ; but the plaintiffs charge that the Eastern Railroad in New-Hampshire had no authority to make any other agreements than said lease, and that all

other understandings were merged in said lease; that by said lease only the use of the property, &c., of the Eastern Railroad in New-Hampshire passed, and that the rent reserved was a share of the net profits, and that when profits are earned the Eastern Railroad Company holds a part thereof in trust for the Eastern Railroad in New-Hampshire, and the stockholders thereof:

22. That the defendants pretend that they will, in good faith, appoint arbitrators to settle all matters of claim under the lease; but the plaintiffs fear that, under the circumstances stated, they will assent to a wrongful disposition of the funds, and charge that said directors only intend to have a fraudulent reference, under the control of the Eastern Railroad Company, so as to bar the rights of the plaintiffs.

23. The plaintiffs pray for an answer, and that the books of said Eastern Railroad in New-Hampshire may be produced by said Drown, the clerk thereof, for an account of the sums due from the Eastern Railroad Company to said Eastern Railroad in New-Hampshire, as rent, according to the terms of the lease, to be paid by decree of this court to the Eastern Railroad in New-Hampshire, to be distributed according to law, or that the proportion thereof belonging to the plaintiffs be paid over to them, with interest for the time it became due; that in rendering such account the Eastern Railroad Company may be prohibited from deducting any thing for losses by defalcation of its officers, interest, or other charges not within the true meaning and intent of the lease; and that in such adjustment said Eastern Railroad Company may be allowed only the amount of capital stock issued by them at the time of making the lease, with such slight additions as were then contemplated; and that the defendants may be restrained from making any settlement of these matters in controversy, or from entering into any reference or arbitration of them without leave of court, and

for further relief, and for process.    Bill signed and sworn to, July 16, 1859.

The Eastern Railroad Company demurs to this bill, and assigns for causes of demurrer the following :

" 1. That this court ought not to have or take further cognizance of this suit as to them, because they say that the said supposed causes of suit, and each and every one of them (if any such have accrued to the complainants), accrued out of the jurisdiction of this court, that is to say, within the commonwealth of Massachusetts :

2. That the said complainants have not, by their said bill, made such a case as entitles them in a court of equity to any discovery from these defendants, or to any relief against them as to the matters contained in said bill, or any of such matters :

Wherefore, and for divers other good causes of demurrer appearing in said bill, these defendants demur thereto and pray judgment," &c.

The other defendants, the Eastern Railroad in New-Hampshire, and Goodwin, Drown, Reed, Brown and Chase, have filed an answer, in which they first assert and insist upon the objection that this court has not jurisdiction of the subject matter of the complainants' bill, because they say that said indenture was executed by said Eastern Railroad in New-Hampshire, with said Eastern Railroad Company, a corporation created by the laws of the State of Massachusetts, and existing within the territorial limits of said State, and without the limits and jurisdiction of this State and of this court; and that that part of the contract contained in said indenture, which the complainants allege has not been performed, was and is by said indenture to be performed within the limits of Massachusetts.   Also, because in and by said contract it is provided, in the sixth article of said indenture, that such a dispute as is the subject matter of this suit

shall be adjusted by arbitration, as will appear by said articles of said indenture, a copy of which makes a part of the bill ; and the directors of said Eastern Railroad in New-Hampshire say that they have always been ready, and are now ready to agree upon arbitrators in good faith, to settle this question according to the terms of said con-. tract (and in their answer they set forth an agreement signed by both corporations to refer this matter, and selecting each a referee). Also, because said Eastern Railroad Company is not answerable to the stockholders of said Eastern Railroad in New-Hampshire, in their separate and individual capacity, but only in their corporate or aggregate capacity, and through the action of said corporation under the direction of its legally constituted officers ; and because it is provided in said indenture that " the dividends shall be paid in proportion to the capital stock respectively paid in by the stockholders of each road by assessment at the time of such dividend ;" and the complainants' remedy, if any they have, is not by bill in equity, but by mandamus, to compel a dividend to and among the stockholders in both roads, of what is and has been wrongfully withheld, if any thing. They then proceed to answer the bill.

*Hackett*, for the Eastern Railroad Company.

1. In support of the demurrer of the Eastern Railroad Company, our first position is, that courts of equity do not take cognizance of suits unless either the property which is the subject matter in controversy, or the defendants themselves, are within their territorial jurisdiction.

The bill alleges that the Eastern Railroad Company is a corporation duly established by the laws of Massachusetts. Now we do not deny that this court would have jurisdiction of a suit against a Massachusetts corporation, for the purpose of controlling so much of its property as might be found in this State. But we claim that no

authority has been shown, or can be shown, where a court of equity has sustained a suit when there was neither a corporate organization nor agent, nor the property upon which the decree was to operate, within its territorial jurisdiction. Our position is, not that the Eastern Railroad in New-Hampshire, by becoming a party to the lease, has placed their road or the lease without the jurisdiction of this court; but our position is, that neither the money alleged to be due as rent, nor the officer whose duty it is to pay said money, nor the corporate organization which controls the money, are within this State; and that therefore this court, as a court of equity, will not take jurisdiction of this suit as against the Eastern Railroad Company. 1 Dan. Ch. Pr., ch. 4, sec. 12.

Besides, even if but a portion of the property of the defendants were within the territorial jurisdiction of this State, although that fact would in law confer jurisdiction over such property, yet it would not extend the jurisdiction of this court into another State. It is the property in this State, and not the corporation in another State, that this court will exercise jurisdiction over. Courts of equity decline to act unless the entire thing, the whole of the subject matter upon which they are to act, or the persons or organization which control the thing in litigation, are within the reach and under the control of the court. The actual and available power of a court of equity must be commensurate with the subject matter in litigation, and the rights of all the parties in interest, before it will act at all. It acts for all or none. It will dispose of the whole matter, or do nothing.

Stockholders in the New-Hampshire road, and residing in New-Hampshire, have brought this suit against a Massachusetts corporation. What, then, gives this court jurisdiction? Stockholders in twenty other jurisdictions can, on the same principle, maintain their suits in Maine, Vermont, Rhode-Island, Connecticut, New-York, etc.

Would such a decree as is prayed for in this suit conclude all the parties in interest, or oust the jurisdiction of the Massachusetts courts? Story Eq. Pl., sec. 81, and notes.

If it be conceded that this court has jurisdiction of the lease, yet that does not draw after it the jurisdiction or power over the thing sought, and without which a court of equity will not act,—the corporate organization, or the money in dispute, or the treasurer, or officer who is to fulfill the decree prayed for. Story Eq. Pl. 82, 83, 85.

2. Besides, can the complainants repudiate some of the terms of the lease and claim under others, and obtain a decree here which will control the money of the Eastern Railroad Company, in Massachusetts, and effect equity between all the parties in interest, while they are not acting for either party to said lease, but against both?

These two companies, before the bringing of this bill, had, in writing, agreed upon an arbitration, and appointed arbitrators to settle the matter involved in this suit. If the Eastern Railroad in New-Hampshire are bound by that submission, how do the complainants escape? If they claim the rent secured by the lease, are they not bound by a submission made in good faith, and in accordance with the terms of the lease? If the complainants repudiate the contract, and claim of the Eastern Railroad Company, as trustees, it will turn out that the stockholders in the New-Hampshire Road have already received twice as much as their road has earned.

3. But we deny the position that the complainants, independent of the Eastern Railroad in New-Hampshire, have any claim, rights or remedies, against the Eastern Railroad Company; and, if it were otherwise, that fact would not alter the jurisdiction of this court.

What we claim is, that the agreement to refer was of the essence of the contract—an ingredient in and consideration of it.

March *v.* Eastern Railroad Company.

This is not like a case where the whole subject matter of a contract between parties is to be disposed of either by suit or reference, and where it is indifferent which tribunal is resorted to. Here only a matter incident to the fulfillment of the contract is in dispute, and it well might have been of the essence of the contract to make a stipulation to avoid suits betweeen the two parties, or between the Eastern Railroad Company and every stockholder in the Eastern Railroad in New-Hampshire, to which they are exposed, if the complainants' positions are sound.

4. But if there be any doubt about this position, our next point is, that this arbitration, having been entered into in compliance with the vote of the stockholders of the Eastern Railroad in New-Hampshire, the complainants' corporation, and being in accordance with and in fulfillment of the contract between the two roads, and before the bringing of their suit, binds both corporations, and, of course, the stockholders in both; and that as these complainants have no rights, interests or remedies, except as stockholders in the Eastern Railroad in New-Hampshire, the subject matter of this suit is now regularly and legally before another tribunal, and that thereby the jurisdiction of this court is ousted.

We have no occasion to controvert the general proposition, that an ordinary agreement to refer does not oust the jurisdiction of this court. But what we do say is, that an executed agreement to refer, as in this case, leaves the complainants without cause of action here.

5. Our next position is, that this bill must be dismissed, because there are not proper parties to it. The complainants, five in number, and claiming to own and to be interested in four hundred and six shares of the stock in the Eastern Railroad in New-Hampshire, the whole of which stock they allege to be divided into four thousand nine hundred and twenty-five shares, bring this bill against the corporation in which they are stockholders, its directors,

which they may well do, and the Eastern Railroad in Massachusetts, for their share of the rent alleged to be due from the Massachusetts to the New-Hampshire road, according to the terms of the indenture between the two roads; and they pray to have their share paid to them, and they say they are seeking to enforce their individual rights as corporators, not through but independently of the Eastern Railroad in New-Hampshire. Have they the proper parties to maintain such a suit, and for the cause and purpose alleged? The owners of the four thousand five hundred and nineteen shares are not parties to this suit. Will it be said that the directors of the Eastern Railroad in New-Hampshire represent the holders of the four thousand five hundred and nineteen shares? If they are the representatives of the four thousand five hundred and nineteen shares for the purpose of being parties to this suit, they represented and bound the holders of the four hundred and nine shares, the complainants in this suit, when they agreed to refer the question involved in this suit.

But the very ground upon which these complainants are seeking their remedy, " *independently of the Eastern Railroad in New-Hampshire,*" is the alleged fraudulent conduct of their directors; and without this ground they have no *status* in court. Now, are the complainants who allege this fraud in a position to say in a court of equity that the directors against whom they make these charges are proper trustees to represent the other stockholders? Can a stockholder in one corporation sustain a suit in equity against his own corporation and another corporation, for the alleged fraudulent combination of the officers of both corporations to defraud him as a stockholder, seeking an entire change of their whole relations and contracts, without making the stockholders of either corporation parties, or notice to either corporation, except to those alleged fraudulent directors? 1 Dan. Ch. Pr., sec 309.

Besides, the bill itself alleges, as one of the frauds, the election of these directors for the purpose of cheating these complainants, and they bring to your Honors' notice the fact that neither the corporation nor the stockholders of the four thousand five hundred and nineteen shares are represented here by trustworthy persons, nor are the stockholders charged with these frauds made parties defendant. The rule is, that " all persons having an interest in the object of the suit ought to be made parties." Calvert on Parties 10, 11; Story Eq. Pl., sec. 72; Story Ch. Pr., sec. 77.

6. One of the heads of jurisdiction in equity is the avoidance of a multiplicity of suits. If the avoiding many suits is a ground for taking jurisdiction of a matter, the contrary tendency would seem to be a good reason why a court of equity should not take jurisdiction of a matter. Now, what reason has been assigned, or can be assigned, why the courts in the twenty other jurisdictions in which the other stockholders in the Eastern Railroad reside, may not and will not take the same jurisdiction of this matter which it is claimed belongs to this court? The jurisdiction of the lease, or of the New-Hampshire Railroad, gives the court no control of the thing in controversy, or over all the parties in interest. It is the absence of the subject matter of this suit, the money alleged to be due, and the corporate organization that controls it, which upon the face of it is fatal to this bill.

The case of *Libby* v. *Hodgdon*, which the complainants appear to rely upon with confidence, is really an authority against them. In that case the court took jurisdiction because there was, within this State, property upon which their judgment could operate, and, by implication, holding, if there had been no such property, there would have been no such jurisdiction. Now, if this were a suit at law against the Eastern Railroad Company, and their property within this State was attached, or if it were a bill to

set aside the lease for alleged cause, we should not question the jurisdiction. But this suit seeks neither property nor remedy within this State, and is commenced by five stockholders in the Eastern Railroad in New-Hampshire against a foreign corporation, not only independently of the corporation in which they are stockholders, but in derogation of an executed agreement between the two companies to refer, and seeking remedies to be enforced without this State and against the contract of the corporation in which they are stockholders, and from which they derive all these rights.

The question is not whether this court has jurisdiction over that part of the property of a Massachusetts corporation which is within this State. This is not denied. Nor is it what effect the courts of Massachusetts will give to a judgment of this court against a Massachusetts corporation. This is immaterial. But the question is, will the decree and process of this court, as a court of equity, by its own inherent force, reach and control the thing in dispute, the money at Boston, in the custody of the defendants' treasurer; or reach and control the defendants' corporate organization, which is local in Massachusetts?

But this is not all. This is not a bill to recover an ascertained and undisputed amount or proportion of money, or for a specific performance of a contract out of this State, but the court will see that the bill is framed upon the idea that this court, preliminary to the relief sought, will examine, adjust and settle all matters between these two roads; not only all matters of account, which it will be seen are neither small or free from dispute, but the whole matter of branch roads and increase of capital, and thereupon, from this forum, distribute the balance found upon these processes to those who are entitled to it.

With one twentieth of one side and no part of the other side properly before it; with the alleged official delinquents, the funds and corporate organization, which are the

real subjects of controversy, and the instruments by and through which redress is to be afforded, out of their territorial jurisdiction, this court are expected to afford a remedy, not against either persons or property in this State, but by one comprehensive decree, consequent upon a full examination of the whole matter, to adjust all the disputes and differences now pending between the Eastern Railroad in New-Hampshire and the Eastern Railroad in Massachusetts, and such disputes as these complainants, by their bill, have put in issue. Great as will be the labor of the court if it shall attempt to perform this complicated duty, it will be less than that of the counsel who undertake to find the authorities which impose it.

*Rollins*, for the complainants.

I. Can a stockholder of a corporation maintain a bill of this character? He can upon the following authorities: *Dodge* v. *Mosely*, 18 How. 341; *Wood* v. *Draper*, 24 Barb. 187; *Bagshaw* v. *Eastern Counties R. Co.*, 7 Hare 114, 129; 6 Railway and Canal Cases 152; *Coleman* v. *Eastern Counties Railroad Co.*, 10 Beav. 1; *Solomans* v. *Laing*, 12 Beav. 377; *Kean* v. *Johnson*, 1 Stockton 401; *Manderson* v. *Bank*, 28 Penn, 379; *Gray* v. *Chaplin*, 2 Sim. & Stu. 267; *Beman* v. *Rufford*, 6 E. L. & E. 106; *Winch* v. *Railroad*, 13 E. L. & E. 506; *Brown* v. *Marsh* 21 N. H. 81.

The facts stated in the case made by the bill bring this cause within the principles settled by these authorities.

II. It is not readily perceived what is meant by the causes of suit accruing out of the jurisdiction of the court, to wit., within the jurisdiction of Massachusetts. 1. If the language is to be taken literally, as stated, the answer is *debitum et contractus sunt nullius loci*. Actions founded on contracts are transitory, though made and even stipulated to be performed out of the kingdom. 1 Ch. Pl. 270, 273; Broom Leg. Max. 414, note h; *Bliss* v. *Houghton*,

13 N. H. 126; *Gray* v. *Johnson*, 14 N. H. 419. 2. If it is meant that the Eastern Railroad Company cannot be sued because incorporated in Massachusetts, the answer is, that question has been settled in this State by the case of *Libby* v. *Hodgdon*, 9 N. H. 394. This question has been adjudged in the same way in New-Jersey. *Moulin* v. *Trenton Ins. Co.*, 1 Dutcher 57. 3. If it is meant that a court of equity cannot act upon the property of the Eastern Railroad Company, or any thing of this kind, the answer is, this position is not tenable, as proper service has been made upon the company. The fact that the property is not within the jurisdiction, constitutes no bar to a proceeding in a court of equity, if the person is within the jurisdiction; for the court acts upon the person. *Equitas agit in personam.* Story Eq. Pl., sec. 489; 2 Story Eq. Jur., secs. 743–4; *Great Falls Manf. Co.* v. *Worster*, 23 N. H. 462, and cases there referred to. 4. If it is meant the rent is payable at the residence of the treasurer of the Eastern Railroad Company, the answer is, that it does not appear by the bill that his residence is not in New-Hampshire; and that the causes of action in this case do not arise under the lease, but independent of the lease.

III. The clause in the contract between the two companies as to arbitration, does not oust this court of its jurisdiction. 1. An agreement to refer any matters which may thereafter be in dispute between the parties in relation to the contract, does not bar a suit either at law or in equity. *Smith* v. *Railroad*, 36 N. H. 487, and cases there referred to; *Thompson* v. *Charnock*, 8 D. & E. 139; Russell on Arb. 52. 2. The complainants are seeking to enforce their individual rights as corporators, not through, but independently of the Eastern Railroad in New-Hampshire, and hence they cannot in any way be affected by the agreement in relation to a reference in the lease between the two companies.

IV. A mandamus is not the proper remedy, and would

not lie in this case. Courts will not exercise their extra-ordinary power by writ of mandamus to effect purposes as well effected by the ordinary remedies; and accordingly, to obtain relief by this process, the applicant must not only show a specific legal right, but there must be no other specific remedy adequate to enforce that right. Ang. & Am. on Cor. 793; *American Asylum at Hartford* v. *Phœnix Bank,* 4 Conn. 172; *King* v. *Church Wardens,* 5 D. & E. 713; *King* v. *Bank of England,* 2 Doug. 524.

SARGENT, J. As we are not to decide this case upon the bill and answer, as between any of the parties, but all the questions raised thereon are still open and to be considered and settled upon their merits hereafter, it is not material to consider the answer of those parties who have made one, in order to settle the questions now before us. This answer has, therefore, been omitted in stating the case, except so far as it objects to the jurisdiction of this court; and this portion of the answer was stated only because it contains, substantially, most of the positions relied upon by the Eastern Railroad Company to sustain their demurrer, though some other positions are taken in argument, such as that there are not proper parties to the bill, &c. So, also, the provisions of the lease are omitted in the statement of the case, except such portions as are stated in the bill, which appear to be substantially correct. In considering the questions now before us, which are only those raised by the demurrer of the Eastern Railroad Company, we are to take the facts as stated in the bill to be admitted. The questions raised by this demurrer seem to relate solely to the jurisdiction of the court, and though some of the positions relied upon are taken under the first cause assigned in the demurrer, others are evidently taken under the second cause, as there stated.

It is claimed by the Eastern Railroad Company:

1. That this court has not jurisdiction over the Eastern

Railroad Company, a foreign corporation, existing without the limits of this State:

2. That the contract set forth in the bill was to be performed in Massachusetts, and therefore the court has not jurisdiction of the subject matter:

3. That the jurisdiction of the court is ousted by the agreement to refer or arbitrate, contained in the indentures:

4. That the Eastern Railroad Company is not answerable to the stockholders of the Eastern Railroad in New-Hampshire, but only to the corporation:

5. That the plaintiffs have a full and perfect remedy at law, by mandamus, and therefore this court has no jurisdiction:

6. That there are no proper parties to the bill, so as to give this court jurisdiction.

In considering these questions it may be convenient to transpose their order, and begin with the last.

I. Are these plaintiffs proper parties to commence and prosecute these proceedings? It is suggested in the argument that the bill should be dismissed because the other stockholders are not made parties. But it is well settled that when the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill in behalf of themselves and others having a like interest, but in all cases where one or a few individuals of a large number institute a suit on behalf of themselves and others, they must so describe themselves in the bill. This rule applies to shareholders in a corporation as well as a private company or partnership. Dan. Ch. Pr. 290, 291; Story Eq. Pl. 107, 109, 110, 111, 113, 115; *Walworth* v. *Holt*, 4 Mylne & Craig 635; Brightly's Eq. Jur. 529; Adams' Eq. 319, 320. Nor is this in contravention to the general rule, that in equity all persons must be made parties who have an interest in the result; but when the parties are very numerous, as a matter of convenience, and to prevent abatements by

death, and the non-joinder of unknown parties, the court will permit a few to represent the whole, and in that case the bill should expressly state that it was filed as well on behalf of other members as of those who are really made complainants. Edwards on Parties 40.

A shareholder in an incorporated company may file a bill in the behalf of himself and all the other stockholders, to restrain the directors from committing a breach of trust, as by making a contract of guarantee in behalf of the corporation which they were not empowered by the charter to make, or committing other clear excess of chartered powers. *Coleman* v. *Eastern Counties Railway*, 10 Beav. 1; Ang. &. Am. on Corp., sec. 312.

It is now no longer doubted, either in England or the United States, that courts of equity in both have a jurisdiction over corporations, at the instance of one or more of their members, to apply preventive remedies by injunction to restrain those who administer them from doing acts which would amount to a violation of charters, or to prevent any misapplication of their capital or profits which might result in lessening the dividends of stockholders or the value of their shares, as either may be protected by the franchises of a corporation—if the acts intended to be done create what in law is denominated a breach of trust. And the jurisdiction extends to inquire into and to enjoin, as the case may require that to be done, any proceedings by individuals in whatever character they may profess to act, if the subject of complaint is an implied violation of a corporate franchise, or the denial of a right growing out of it, for which there is not an adequate remedy at law. *Dodge* v. *Woolsey*, 18 Howard 341, and cases cited.

In *Robinson* v. *Smith*, 3 Paige Ch. 233, a principle is laid down that seems applicable to this case as here stated by these complainants. If the directors of a corporation refuse to prosecute, by collusion with those who had

made themselves answerable by their negligence or fraud, or if the corporation was still under the control of those who must be made the defendants in the suit, the stockholders, who are the real parties in interest, would be permitted to file a bill in their own names, making the corporation a party defendant. And if the stockholders were so numerous as to render it impossible or very inconvenient to bring them all before the court, a part might file a bill in behalf of themselves and all others standing in the same situation. See also *Cockburn* v. *Thompson*, 16 Vesey Jr. 321; *Good* v. *Blewitt*, 13 Vesey Jr. 397; *Whitney* v. *Mayo*, 15 Ill. 251; *Wood* v. *Draper*, 24 Barb. Sup. Ct. 187, and authorities cited.

The effect of this proceeding in this way is to avoid the very multiplicity of suits complained of; for every stockholder, no matter in what jurisdiction he resides, may, if he please, in some way become a party to this proceeding, without commencing a new suit either in his own or any other jurisdiction; nor are any of the stockholders left out and not made parties to this proceeding, as the defendants complain, because not only the directors, as individuals, but the Eastern Railroad in New-Hampshire, are made parties, as defendants, and those stockholders in this last mentioned road who do not desire to come in as plaintiffs here, are of course represented by and in the corporation, as defendants. All the stockholders in this road, who are satisfied with the proceedings of the directors, either from the fact that they have a greater interest in the Eastern Railroad Company than in the New-Hampshire corporation, or from any other cause, are represented here as members of the corporation, and under the corporation which is made a party; but all those whose interests are adverse to those of the corporation, as now managed and controlled, and who do not wish to be defendants as members of the corporation, can, in this mode of proceeding, become plaintiffs, if they wish. If

these plaintiffs had omitted to make the corporation of which they are members a party defendant, then there would be reason for the position assumed that all the stockholders are not parties, but all are either actual parties to the record, or are properly represented by those who are parties, and may become plaintiffs, if they are dissatisfied with their position as defendants, as members of the company.

II. The position that a mandamus would be an adequate remedy at law, and that therefore these proceedings are unauthorized, does not seem to be relied on by the defendants' counsel, as it has not been alluded to in their argument. How would a mandamus meet the difficulty here complained of ?

The plaintiffs complain that they do not get their dividends, but they admit that the Eastern Railroad in New-Hampshire has nothing to divide, and can divide nothing. The complaint is, that the dues of the company are not collected, and they seek a remedy for that difficulty, yet how can this court compel, by mandamus, the Eastern Railroad Company to pay over, if the court has no jurisdiction over said company in the present proceeding ?

But suppose they have jurisdiction, and issue the mandamus to that company, they have nothing in their hands, as they say, to pay over, and the Eastern Railroad in New-Hampshire and their directors say the same. How could the court, as a court of law, order one corporation to pay over any money to another, when the corporation ordered to pay denied the indebtedness, and the other, to whom the money was to be paid, admitted there was nothing due, and made no claim ? The complaint and fear of these plaintiffs is that the business will be so managed between these corporations, which are both alleged to be managed and controlled by the same interest, that their remedy will be forever defeated. We see no reason, if the facts shall prove as stated in the bill, why the case is not a

proper case of equity jurisdiction, and one for which at common law there is no adequate remedy.

III. The next objection, that the Eastern Railroad Company is not answerable to the stockholders of the Eastern Railroad in New-Hampshire, but only to the corporation, is not urged in the argument, and we are unable to see any ground upon which it can rest; for it is difficult to see why, if the court have jurisdiction over that corporation as well as the one in New-Hampshire, that company as well as the other should not be held to answer to these plaintiffs, since the charge is that the Eastern Railroad Company, together with the Eastern Railroad in New-Hampshire, representing a majority of its stockholders, who are also alleged to be in the interest of the Eastern Railroad Company, and the directors of the New-Hampshire road, are all together, and, by common consent, and with one common design and purpose, under color of a contract between the two roads, illegally, and in law fraudulently misapplying the funds belonging to both corporations in such a way as not only to lessen but absolutely destroy all profits of the Eastern Railroad in New-Hampshire, and swallow up all its income, to the injury of these plaintiffs, when, but for such illegal misapplication, there would be large amounts due from said Eastern Railroad Company to the Eastern Railroad in New-Hampshire, to which they would be entitled proportionably with other stockholders, as dividends, according to the true intent and meaning of the indentures between them. Why, then, are they not both answerable alike to these plaintiffs, if either is so answerable? And there would seem to be something strange in the position that these plaintiffs have no claim on this rent except through the Eastern Railroad in New-Hampshire. The plaintiffs' position is, that these two roads are combining to cheat them, by an arrangement between themselves, of a fund which they hold in trust for the benefit of the plaintiffs and

others. The plaintiffs ask that an account may be taken of this fund, and the Eastern Railroad Company may be ordered to pay its share to the Eastern Railroad in New-Hampshire, and the latter required to divide it to the plaintiffs and others interested. Now if the facts are so—and in considering this question upon the demurrer they are to be assumed to be so—would not these plaintiffs have some claim for relief as well against the one company as the other?

IV. Is the jurisdiction of this court ousted by the agreement to arbitrate contained in the indentures? An agreement to refer any matter of dispute that may hereafter arise between the parties, is not unusual in contracts of insurance, of partnership, or for the construction of buildings or other works. But such agreements do not bar the parties of their remedies, either by action at law or by suit in equity upon such contracts, neither will such agreements be specifically enforced in equity; *Smith* v. *B. C. & M. Railroad*, 36 N. H. 487; so that this objection would be without weight if this were a proceeding between the parties to the indenture.

Either party might commence and maintain an action at law or a suit in equity upon the indenture, against the other party thereto, notwithstanding this agreement to refer; much less can these plaintiffs be barred from maintaining this suit, by an agreement to which they were not parties, but which has been made between the two defendants. We have seen that these plaintiffs are proper parties, bringing this bill in behalf of themselves and all others, stockholders in the New-Hampshire road, who may wish to join them, against both these railroad corporations. The agreement to refer is between two co-defendants. And can agreements between two adverse parties bind these plaintiffs, or preclude them from resorting to their equitable remedies for redress? It therefore becomes immaterial to inquire whether these

companies had, before the bringing of this bill, agreed in writing upon an arbitration and appointed arbitrators, as is suggested in the argument of counsel, or not until afterward. If it had been done before the filing of this bill it could make no difference. Two referees only have been agreed on, while three are required; no hearing has been had, and no notice given of any; and if it would be unjust to allow a reference to be entered into by unfriendly directors, by which the plaintiffs' rights should be in effect definitively and forever settled, in their absence and without a hearing, it could not be less unjust to allow such a reference to proceed under the circumstances stated. And that it would be unjust to allow it to be entered into is apparent, when we examine the nature of the claim which these plaintiffs set up. They claim to be stockholders in the Eastern Railroad in New-Hampshire; that the Eastern Railroad Company are bound by contract to pay semi-annually certain rents to their road, which the directors of that road are bound to divide and pay over to them and others; that from some mistake or misapprehension, or from wrong intentions, the directors do not collect this rent, though a large amount of it is due, and has been for some five years accumulating, but that the directors are disposed to yield to the unjust claims of the Eastern Railroad Company, and give up said rent to them, to the injury of the plaintiffs and others. The plaintiffs also say that these directors openly avow that they are of opinion that there is no just claim for rent, either on the part of the Eastern Railroad in New-Hampshire or these plaintiffs; and the plaintiffs are desirous that this question should not be settled by those who have no faith in their claim, and who would be willing to admit it all away, and must necessarily do so, if they were to take the same positions before the referees which they have heretofore done, nor by referees selected by them, and before whom the plaintiffs and other shareholders would have

no claim to be heard. And it is against any liability to have these claims thus improperly and unfairly adjudicated, that they ask the interference of this court ; and if they are entitled, as they allege, to four hundred and six shares out of the four thousand nine hundred and twenty-five, the whole amount of shares in that corporation, thus owning nearly one twelfth of all the stock, to say nothing of those who have come in as plaintiffs the present term, it would seem that they ought to have a hearing somewhere, before the question is finally decided against them.

It is insisted that this agreement to refer is of the essence of the contract, an ingredient and consideration of it, and that it amounts to a waiver of the right to sue either at law or in equity. It is not to be denied that this agreement was an ingredient and consideration of the lease ; and it may have been an important ingredient and consideration of it, but it can hardly be correctly said to be of the essence of the contract. It is merely incidental and collateral. It may be struck out, and the contract in all its essential parts and features would not be affected. By law such an agreement does not amount to a waiver of the right to sue upon the contract, even as between the parties to it. But suppose it were otherwise, and that all the defendants' positions in regard to this agreement to refer were correct, what consequence would result in this case ? Neither of the parties to the indenture have commenced suits at law or in equity, nor have they any desire to do so. One cause of complaint is, that they are too willing to refer, and that they are combining, by means of such a reference, to cheat the plaintiffs of their shares of a fund which the one corporation holds, but which, in justice and equity, belongs to them, and which they cannot reach in law without the aid of the other. And if the Eastern Railroad in New-Hampshire were barred to sue at law or in equity, it would not follow that the plaintiffs may not seek their redress in court.

V. That the contract set forth was to be performed in Massachusetts; or, in the words of the demurrer, "that the supposed causes of suit, and each and every of them (if any such have accrued to the complainants), accrued out of the jurisdiction of this court, that is to say, within the commonwealth of Massachusetts." It does not appear, from any thing in the bill or the indentures, where the. contract was made, or where the indentures were signed, or where the contract was to be performed, in any particular, except at the close of the first article of the agreement in said indentures, where it is stipulated that the rent which was reserved to the Eastern Railroad in New-Hampshire should be paid to the treasurer thereof, who shall demand and receive the same at the residence of the treasurer of the said Eastern Railroad Company. But it is not shown nor stated whether the residence of the treasurer of said company is in New-Hampshire or in Massachusetts, nor is there any thing before us to show how that fact is. But in our view that is wholly immaterial.

1. Let us suppose that this contract was made in Massachusetts, and by its terms was to be performed there. Does it follow that no action could be maintained upon it in any other jurisdiction, if both the parties are properly there? That cannot be claimed, for it is well settled that actions founded upon contracts are transitory, though made and even stipulated to be performed out of the kingdom. To be sure, the general rule is to be applied in such cases that the *lex loci contractus* is to govern in the interpretation of the contract; but an action or bill in equity may be brought upon the contract any where, where the parties are, or can be made subject to the jurisdiction of the court. *Debitum et contractus sunt nullius loci.* Broom Leg. Max. 414, note 3; 1 Smith's L. C. 340; Story Conf. Laws, sec. 362, p. 299.

2. But it is said that the property on which the decree

of the court is to operate, if obtained, is not in this jurisdiction, and therefore the court cannot act. Now suppose this to be so; suppose there is some specific fund out of which the money claimed by these plaintiffs must be paid, if paid at all, and that fund and the person having the charge of it, and whose duty it would be to pay it, are all out of the territorial jurisdiction of the court; that makes no difference, provided the court has or can acquire jurisdiction of the parties themselves. For while the property is not within the jurisdiction, but the party sued as defendant is within reach of their process, a court of equity will take jurisdiction, and compel the party to do right by remedies directed against his person. *Great Falls Co.* v. *Worster*, 23 N. H. 462, and cases cited. But these principles really have no application to this case, because the facts are not as we have above supposed. There is here no specific fund from which payment of this claim must be made, if made at all. Here the bill, so far as the Eastern Railroad Company is concerned, is for the enforcement of a merely personal contract for the payment of money; and whether these plaintiffs seek to recover upon the ground of fraud, of trust, or of contract, is entirely immaterial, since, upon either ground, they stand well in a court of equity. For in cases of fraud, trust, or of contract, the jurisdiction of a court of chancery is sustainable, wherever the person be found, although lands not within the jurisdiction of that court be affected by the decree. *Massie* v. *Watts*, 6 Cranch 148. The court of chancery has jurisdiction to enforce the performance of contracts made between foreigners and in a foreign country, although the defendant is only temporarily within the jurisdiction of the court at the time of the service of the process upon him. *Mitchell* v. *Bunch*, 2 Paige's Ch. 606. But, from the facts stated in the bill, it would seem that there was no lack of property of the Eastern Railroad Company within the jurisdiction of the court, by means

of and upon which the orders and decrees of the court might readily be enforced. There is a class of actions in their nature local, because of the peculiar nature and situation of the property which is the subject matter of the litigation ; and in such cases courts of equity take jurisdiction of the suit, because the property is within the jurisdiction, though the person to be affected is elsewhere; and though no jurisdiction has been acquired over such person. In such cases the courts are said to enforce their decrees *in rem* and not *in personam*. But the case before us is far from coming within that class of cases.

3. But suppose that all the positions of the defendants were correct, as to the contract being made and to be performed in Massachusetts, and that, therefore, the court had not jurisdiction to enforce the contract; and that the property or fund to be affected by the decree of the court was without the jurisdiction, and that therefore the court could not act to enforce the contract as between the parties to it, yet these plaintiffs still might stand well enough here, as the foundation of their claim is not upon the contract entered into between the two defendant companies, as these plaintiffs were no parties to that contract; but they are seeking redress of these defendants because they have misapplied the funds in their hands, and appropriated them for illegal purposes, contrary to equity and good conscience, and contrary to the terms of the agreements, even between the defendants themselves, whereby the plaintiffs are deprived of their share of the rents and income which equitably belong to the New-Hampshire road, but which the Eastern Railroad Company have either fraudulently expended, or else now hold in trust for the benefit of these plaintiffs, and others interested ; so that these plaintiffs do not stand in the position of a party to a contract, trying to enforce that contract in court, but in vindicating their own rights they ask that the defendants may be held liable, at least to the extent that

their own contracts, voluntarily entered into between themselves, and to which the plaintiffs were no party, would make them, when those contracts shall be legally and equitably interpreted and applied.

4. It is contended by the defendants' counsel, in argument, that courts of equity decline to act unless the entire thing—the whole subject matter upon which they are to act—or the persons or the organizations which control the thing in litigation—are within the reach and under the control of the court: that the actual and available power of a court of equity must be commensurate with the subject matter in litigation, and the rights of all the parties in interest, before it will act at all: that it acts for all or none; that it will dispose of the whole matter, or do nothing. No authority is cited for this position. We apprehend that the court do not inquire how far it would be in their power to render complete justice to the parties by their final process. If the parties and the subject matter of the controversy are within their jurisdiction, they will not decline to act, because the amount in controversy is large, and the amount of property within reach of the execution is small; the residue of the property of the defendants being in another government. The question as to how his judgment shall be satisfied when he gets it, is for the party who obtains it, and not for the court.

VI. Has the court jurisdiction over the Eastern Railroad Company, a foreign corporation? This is the question upon which more stress is laid, perhaps, than upon any other position taken; and in practice it is no doubt a question of much importance.

It belongs to every government to regulate the rights, the *status*, and condition of its own subjects. Courts of other jurisdictions are not bound, except by what is called *comity*, to regard the laws elsewhere established; but justice cannot be administered without some regard to those

laws; because the law of the country constitutes an essential element and part of every contract, a limit to every right, and an ingredient in every controversy. It is, therefore, settled in all the countries of the common law, that the laws of a government where a contract was made or a transaction occurred, will be regarded, if they are material, and brought to the notice of the court. There are some exceptions to this rule, not material to be here considered.

Corporations exist every where. They are artificial persons constituted by the law, consisting of one or many persons, who are vested with the power of holding property, transacting business, maintaining suits in a corporate name, without mention of the names of the individuals of which it is composed, and without their rights or their remedies being affected by changes of the persons who are from time to time the members of the corporation.

No necessity exists for the recognition by one State of these artificial persons created by the government of another. But as corporations are but companies of individuals acting under a corporate name, the only effect of a refusal to recognize foreign corporations as such, would be to drive them to hold their property and maintain their rights in the names of the individuals of which the corporation was composed. The corporation would be compelled to allege that they were partners, doing business in a common name or firm, and they must be treated as a firm or partnership. Over such a firm, composed of members residing in another jurisdiction, it is clear that our courts would have jurisdiction, as they have of the individuals who compose it, whenever they come into our courts for redress of their own grievances; or where they or any of them come here so that they may be served with our process, or where they have property here which, by our laws, may be made amenable to the decisions of our courts, to the extent at least of that property, and of any

property of theirs which may be afterward found in our jurisdiction.

It would not, of course, be presumed, that in recognizing the personal and corporate character of a company established in another jurisdiction, any court would do so at the expense of holding that thereby such a company of individuals would be exempted from the jurisdiction of our courts as defendants, while they had the rights of persons as plaintiffs. If such bodies are recognized here as persons, with the rights of persons, it is clear that it must be so, subject to the liabilities of persons. If they can sue in our courts, they must be liable to be sued by others, and they must, in this respect, stand on the same ground as the distinct individuals who compose the corporation. If they come within reach of our process, they may have suits against them, and all their property found in this jurisdiction will be made to respond to the judgment that may be recovered against them.

A foreign corporation is permitted to sue in the courts of England. *Henricus* v. *Dutch W. I. Co.*, 2 Ld. Raym. 1532. So a foreign corporation may sue in the federal courts of this country. *Society* v. *Wheeler*, 2 Gall. 105. The same has been held in most of the States of this Union, though not in all. 2 Kent Com. 285, and cases cited; Ang. & Am. on Corp., secs. 372–373; *Bank of Augusta* v. *Earle*, 13 Pet. 519. Such is the law in this State.

And as a foreign corporation can sue in our courts, there would seem to be no reason why it should not be liable to be sued here, in the same way that a domestic corporation could be. It was said to be the rule of the common law that process against a corporation must be served upon its head or principal officer, within the jurisdiction of the sovereignty where this artificial body exists; but there would seem to be no satisfactory or substantial reason why the technical rules of the common law respect-

ing suits against corporations, should not, like many other rules respecting them, be so far modified and made to yield, as to correspond with the present state of things, and to accomplish the ends of justice, by making the property of an absent corporation liable to be attached in the same manner as the property of other absent debtors. If a foreign corporation—say an insurance company in Boston—should establish its president in New-York for the express purpose of making contracts, and should also have property there, it might seem strange if the president could not be summoned there to answer to a debt contracted there by him in the corporate name, and that a distringas could not be allowed to issue against the corporate property. Ang. & Am. on Corp., sec. 402. We find that in this State foreign corporations were only recognized as having the same rights as domestic corporations. In *Lumbard* v. *Aldrich*, 8 N. H. 33, it was held that a corporation, created by the laws of one State, may maintain a suit in the courts of another State ; and, if authorized by charter to hold real estate, it may take and hold land in this State. And as early as 1825 a statute was passed, providing " that when any body politic or corporate are sued in this State, who have no clerk or member residing therein, on whom service can be made, an attested copy of the writ shall be delivered to the agent, overseer, or person having the care or custody of the corporate property, or part thereof in this State, thirty days," &c., " which shall be a good and sufficient service of said writ." This statute would seem to have been made with a view to avoid the difficulty before alluded to, as existing at common law, in consequence of the rule that the process must be served upon the principal officer of the corporation in the foreign jurisdiction ; and not only so, but it provided a convenient way of making legal service upon a foreign corporation which might have either property or officers within our jurisdiction. And in *Libbey* v.

*Hodgdon,* 9 N. H. 394, it was distinctly held that a foreign corporation may be sued in this State, if service can be made upon its agent or its property. In the last case, *Wilcox,* J., says : " If, upon principles of law or comity, corporations created in one jurisdiction are allowed to hold property and maintain suits in another, it would be strange indeed if they should not also be liable to be sued in the same jurisdiction. If we recognize their existence for one purpose, we must also for the other. If we admit and vindicate their rights, even handed justice requires that we also enforce their liabilities, and not send our citizens to a foreign jurisdiction in quest of redress for injuries committed here. There may be difficulties in procuring legal service of a writ upon a foreign corporation, and so in case of an individual residing in a foreign jurisdiction, it may be difficult or impossible to procure such service of process upon him as to subject him to the jurisdiction of our courts. But in either case where the service can be made, or where the person or corporation appears and submits to our jurisdiction, we see no objection to the authority of the court to proceed."

" There seems to be nothing in the character of a corporation to prevent its suing or being sued, like a natural person. It is, in legal contemplation, a person having existence, invested with rights and subjected to liabilities, and very properly a party to proceedings in courts of law or equity, whenever their rights or liabilities are drawn in controversy."

So in Vermont it has been held that an action can be sustained against a foreign banking or other private corporation. *Day* v. *Essex Co. Bank,* 13 Vt. 97. In that case *Redfield,* J., says: " We can see no very good reason why artificial persons shall not be liable to suit in the courts of another State, as well as natural persons. It is not necessary to inquire how far public or municipal corporations could be held to answer suits in a foreign juris-

diction." The same doctrine has been held in Missouri. *St. Louis Insurance Co.* v. *Cohen*, 9 Missouri 417, 441.

Although a corporation existing by the laws of one State cannot be deemed to pass personally beyond the limits of that State, and though service upon a foreign corporation might not be good, if only made upon some one of its officers passing through, or casually in this State, yet if they can appoint and have agents and attorneys who can legally appear for 'them and in their behalf to prosecute in our courts a claim to final judgment, it would be strange, if, when they are called to defend a suit against them, and service has been made upon such agent according to law, and he or the attorney appears, that a judgment against them should not be as valid as the one returned in their favor.

Suppose a foreign corporation should sue in our courts by attorney, and, after a protracted litigation, should fail in their suit, no one could doubt the authority of the court to render a judgment against them for costs. And suppose the suit is brought against the corporation, and the same attorney appears, could there be any more doubt of the authority of the court to render judgment against the company as defendant? And suppose service to be legally made upon the agents of the corporation, and they should not appear, would not a judgment rendered against them upon default be equally valid and binding? " The inquiry is, not whether the defendant was personally within the State, but whether he or some one authorized to act for him in reference to the suit, had notice, and appeared; or, if he did not appear, whether he was bound to appear or suffer a judgment by default." *Lafayette Ins. Co.* v. *French*, 18 How. 404.

In many of the States there have been legislative enactments requiring foreign corporations to appoint resident agents, on whom service of process may be made, in order to entitle them to transact business within the State.

But the service upon such agents in those cases could be no more effectual in giving the courts jurisdiction, than under our statute would be the service upon a principal member or the agent, &c., having the control and care of the corporate property, or part thereof; and that a judgment rendered in one State against a corporation chartered in and by another, where there has been such appearance or such service, will be respected in the State by which such corporation was chartered, and in which it is situated, seems to be well settled.   *Ocean Ins. Co.* v. *Portsmouth Marine Railway*, 3 Met. 420 ; *Moulin* v. *Trenton Mutual Life and Fire Insurance Co.*, 1 Dutcher 57 ; *Lafayette Ins. Co.* v. *French*, 18 How., *ante*.

In the present case the defendant corporation appears, and an appearance of the party has always been held to confer jurisdiction ; *Downer* v. *Shaw*, 22 N. H. 281 ; except when the party appears for the sole purpose of making objection to the authority of the court to proceed.   *Wright* v. *Boynton*, 37 N. H. 9.   Here the appearance is clearly not made for this sole purpose, since the second ground of demurrer is in terms, " that the said complainants have not, by their said bill, made such a case as entitles them in a court of equity to any discovery from these defendants, or to any relief against them as to the matters contained in said bill, or any of such matters."   So that it would seem that the court have jurisdiction, from this circumstance that here is a general appearance for all purposes ; the objection to the jurisdiction of the court over the party defendant filing the demurrer, being only taken in connection with others going to the merits of the bill.

It will also be observed that the demurrer is not in the nature of a plea in abatement.   It is not alleged that the Eastern Railroad Company have not been properly notified ; that they have not been served with proper process, and in a proper way ; and that thereby they are not properly

and legally before the court, for the decision of any question which the court can properly decide. Upon such a state of facts it might probably be safely enough assumed that there has been such a service of process upon the Eastern Railroad Company as would properly and legally subject them to the jurisdiction of the court, so that a judgment upon default would have been valid and binding upon the defendant company, and could be enforced upon any property, rights or franchises of theirs within this jurisdiction. Taking the bill, therefore, *pro confesso*, so far as the questions raised by this demurrer are concerned, we can have no doubt that the plaintiffs are entitled to some relief as against the Eastern Railroad Company.

The demurrer is, therefore, overruled, and said company is ordered to file an answer to the plaintiffs' bill, in ninety days.